## McGEHEE v. McGEHEE.

1· When an award is about being made, between a principal and one of two
sureties, touching certain moneys, alledged to have been placed in his
hands for the payment of the debt, the other surety will be bound by it
when made, either by assenting to it when made, or by being present with
full knowledge that it is about being made, and not dissenting.

Error to the Chancery Court of Montgomery.

THE bill was filed by Albert McGehee, and Joel A. Stokes,
against Abner McGehee, William McGehee, and James A.
Smith. The material allegations of the bill are, that the
complainant, Albert, and the defendant Abner McGehee, be-
came the sureties of Wm. McGehee, in a promissory note to
one Chaney, for $790, and executed their note therefor, due
1st January, 1839. That on the 28th May, the plaintiff, Al-
bert, became the surety of William, to one Daniel Mosely
for $312, due 1st February, 1839. That on the 19th May,
1840, the complainants, together with defendants, Abner and
Smith, became the sureties of William, on a note to the
Branch Bank at Montgomery, for $1860 04, due ninety days
after date, and that Smith became a co-surety with the oth-
ers, upon the promise of complainant, Albert, to indemnify
him against loss. That on the 18th March, 1840, complain-
ants became the sureties of William, in a note to the Branch
Bank at Montgomery, for $500, due ninety days after date,
and that complainant, Albert, indemnified Stokes against loss
from his suretyship.

That complainant, Albert, has been compelled to pay the
debts due to Chaney and Mosely. That the latter debt had
been paid to Mosely previously, by William the principal
debtor, [and the receipt deposited with Abner, but of which
complainant was ignorant ; and that Abner received a credit
for the amount so paid on a settlement of a debt of $3,000
hereafter mentioned. That he has also paid $151 and costs

on the note for $500, and costs and commissions amounting to about $100 on the note of $1860 04.

That about the 5th November, 1840, the Montgomery Rail Road Company, was indebted to the said William McGehee in the sum of $6,700, for work done by him for the Rail Road Company, and he being desirous to secure the complainant, Albert, and the defendant, Abner, against loss from their suretyship, deposited the claim against the rail road with said Abner, to collect, and apply the proceeds to the payment of certain debts, viz: a debt by William of about about $3,000, to one Daniel Mosely, to which Albert, and Abner, were sureties—the debt due to Chaney—the note made by Albert and Smith for $1860—the note for $500 payable to the Bank at Montgomery, and a note due one Thomas Baldrick, of about $500.

That William deposited the receipt of Abner for the said claim with complainant Albert—that he cannot produce the original, as it was handed to Abner, and not returned by him, but was destroyed, and he therefore appends to the bill a substantial copy, which, after reciting the claim against the rail road proceeds—Rec'd, 5 Nov'r, 1840, of William McGehee, the above demands, which I promise to collect, and pay the following notes, and executions, viz:

Daniel Mosely,......................$3,000
John Chaney, ........................ 900
T. Baldrick, ......................... 500
Bank, ...............................2,300
                                    ————
                                   $6,700

That when Abner received the said claim, he knew complainant was the surety of William, and received it for the purpose of indemnifying him against loss, on account of his suretyship, and of discharging the debts specified.

That Abner McGehee being indebted to the rail road, applied the claim placed in his hands in discharge of his own debt, and received a credit for the amount, and has only paid on account of the debts due by William, about $2,600, with interest on the note of $3,600 due Mosely, the balance of the debt being paid by William to Mosely—the debt due Baldrick, and that to the bank, leaving in the hands of Ab-

ner a sum sufficient to pay complainant, Albert, the amount which he has paid as the surety of William.  That William is insolvent, and a non-resident, &c.

Abner McGehee answers, and admits that he and Albert were sureties for William, to Chaney, as stated in the bill, and that it was paid by Albert.  Denies all knowledge of the suretyship of Albert for the debt to Mosely of $312, or of the debt of $500 to the Bank of Montgomery, but as to the latter says, he understood, both from Albert and William, that they were jointly interested in it; and as to the former, denies that any receipt for the money, as charged in the bill, was ever deposited with him, and knows nothing of its payment, either by Albert or William.  Has no knowledge of the payment of $151, or of the cost alledged to be paid on the note of $1860; that he himself has paid the debt, interest and costs, and holds a receipt for the same.

Admits that he received a credit with the rail road, for the full amount of the claim of William McGehee, which he admits was deposited with him for the purpose described in the receipt exhibited to the bill, and which he admits to be a correct copy—but denies, that the debt of $500 due the bank was to be paid out of this fund, or that any debt was to be paid out of this fund, except those on which himself and Albert were co-sureties, as appears by the receipt itself.

He further states, that the company were embarrassed and unable to pay their debts, and proposed to their creditors to issue stock to them in payment, which he, as the agent of William, received for him in good faith, holding himself responsible, if he was dissatisfied with it, to furnish him claims against the company to the amount of his claims, or to pay him the par value of the stock in money.  He made these offers to William, who not being satisfied therewith, it was agreed between him and William, to submit the matter to arbitration, and bonds were executed accordingly, to abide by the award, by William and himself.  That the arbitrators appointed a day for the settlement, and respondent, Wm. and Albert McGehee, attended, and after a full hearing, they made their award in writing, in the presence, and with the full knowledge, of complainant, and that W. McGehee acquiesced in said award, and actually received the balance found to be due.  The award and receipt are made exhibits to the bill,

and he insists this was a fair, just and impartial settlement of these matters, and that they are no longer open to controversy.

He further states, that at the time of the award, the debt due Thomas Baldrick was not considered by the referees, for want of the necessary testimony, and that after the award, William and himself met and settled this matter, and Wm. then executed his note to him for the amount he had paid Baldrick, $890, due the first January, 1845, and that since the award, and since he received the note from William, he had paid the debt due the bank, being the same for which complainant is liable as co-security, and insists that he is entitled to a decree for contribution against him.

Such of the proof as is important, will be found in the opinion of the court.

The chancellor considered the award as equally binding on the complainant, as on William McGehee, and dismissed the bill. This is now assigned as error.

Elmore, for plaintiff in error.

1. The complainant is not bound by the award between defendant and William McGehee—1. Because he was no party to it. 2. Because he did not consent to it. 3. Because his acts and declarations before the arbitrators show that his rights were not intended to be submitted, and were not submitted. 4. Because the submission was upon a false representation by Abner McGehee, of the disposition made by him of the fund placed in his hands by Wm. McGehee. [Lamb v. Clark, 5 Pick. 193 ; Nichols v. Arnold. 8 Pick. 172.]

2. The proof showed the payment by complainant of various debts in which he and defendant were jointly liable as sureties for William McGehee, and that the principal was insolvent.

J. D. F. Williams, contra.

1. An award extinguishes the original demand, and is a bar to every action on such demand. [3 Phil. on Ev. 1026, and cases there cited.]

2. The assignee of a bond has a right to submit any question of defence arising thereon, on the part of the maker, to

arbitation; and their award will be conclusive against the assignor. [Scales v. Wilson, 9 Leigh, 473.]

3. Abner McGehee, as appears by his answer has fully accounted for the collaterals, placed in his hands by Wm. M. McGehee.

ORMOND, J.—The award made on the submission, entered into between Abner and William McGehee, is not impeached, and appears to be unimpeachable, and is, as between them, conclusive upon the matters submitted, and determined by the arbitrators. Is it also binding on Albert McGehee? It appears that Abner, and Albert McGehee, were co-sureties of William McGehee, and that the latter for their indemnity, placed in the hands of Abner, certain claims which he held upon the Montgomery Rail Road Company, who executed a receipt for them to William, and promised to collect the demands, and pay certain specific liabilities, being those for which Albert, and Abner, were his co-sureties. This receipt was deposited with Albert McGehee. It appears to us, that whether William, and Abner, could have submitted this matter to arbitration, without the assent of Albert, (a point not necessary to be decided,) it is very clear, that he is bound by an award, made with his knowledge, at the making of which he was present, and to the making of which he did not dissent. This results necessarily from the fact, that if the arbitrators had awarded that Abner McGehee was responsible for the nominal amount of the claims put in his hands, it would have been a fund for the discharge of the debts of William McGehee, for which he, as co-surety with Abner McGehee, was responsible. If therefore he did not intend, that the award should conclude his rights, as to the value of the fund placed in the hands of Abner McGehee, it was his duty to make known his dissent. It would be most inequitable, that he should be permitted to await the result, and take the benefit of it, or repudiate it as might best comport with his interest. The testimony is full to the point, that he was present aiding, and assisting, William McGehee in collecting testimony to lay before the arbitrators; was present at all the submissions, and when the award was made.

That he could have insisted on the award if it had been beneficial, we consider perfectly clear, as an award in favor of the principal debtor, and requiring one of the sureties to pay the debt from funds derived from the principal debtor, must by extinguishing the debt, enure to the benefit of the other surety. It is well settled, that although strangers to an award are not concluded by it, and therefore can derive no benefit from it, privies in estate may. It has been held, that an award between a vendor, and a claimant of the property, was available to the vendee, in a suit by the same claimant against him, for the same property. [Evans v. Mc-Kinny, Litt. Sel. Cases, 262. See the general doctrine and the authorities in Watson on Awards, 175.]

But it is not necessary to rest this case, on the mere omission of the complainant to dissent from the award, which he knew was about to be made, because we think the evidence shows very satisfactorily, that he consented it should be made. Mr. Bugbee, one of the arbitrators, who was examined as a witness, says, " Albert McGehee was present at the several submissions, as the friend of William McGehee as I understood, and did consent to the said submissions." In answer to the next question, he says, " Albert G. McGehee submitted no matter of his own to us, but during the investigation, he wished us to consider his interest, which was declined. I stated to him, as arbitrator, that we as arbitrators, had nothing to do with the matter between him, and Abner McGehee. That our award could not in any wise affect him , that his case was not before us, and we could not take it into consideration."

In answer to the second cross interrogatory, he says, " During the investigation, and acting upon the matter submitted, Albert McGehee was frequently present. He did not object to the submission, or to the arbitrators acting upon the matters submitted. He wished his rights to be considered, but having been told that could not be done, he did not persist."

It is quite clear from this, that the complainant was willing the matter submitted should be arbitrated, as it appears he *consented to the submission.* He wished the arbitrators also to consider the matters in difference between him, and Abner McGehee ; this they refused, and upon being told that the

award would not bind him in that particular, submitted. It is impossible, that this proposition of the complainant, to consider of matters between him, and Abner McGehee, could relate to the matter submitted, which was whether Abner was to account for the claims put in his hands, at their nominal, or actual value, because in this matter his interest was precisely the same as that of William McGehee. The other matters he wished them to consider of, were doubtless those set forth in this bill; whether the funds in the hands of Abner, was to be appropriated in payment of the debts of William McGehee, for which Albert alone was bound as surety, as well as those, for which he and Abner were joint sureties. This the arbitrators very properly refused, as not within the submission. Be these matters, which he wished them to consider, what they may, it is certain they did not connect themselves with the matter submitted, as the witness explicitly states, that *he did not object to the arbitrators acting upon the matter submitted, but consented to the submission.* That his consent to the settlement of this question, by the arbitrators, would bind him, there can be no doubt. It would in effect be a parol submission of the matters in controversy. Such a consent would bind even a stranger to the award. [Kingston v. Phelps, Peake, 227.]

The award ascertained, that Abner McGehee was liable only for the actual value of the Rail Road demands, which was settled at fifty cents in the dollar. It also determined, that Abner McGehee had paid out the entire amount, except a small sum, in discharge of the debts, for the payment of which it was placed in his hands. It also appears from the record, that Abner McGehee has paid with his own funds, a much larger amount of the debts of William McGehee, for which he and the complainant were jointly bound as co-sureties, than the complainant, and the result is, that the decree of the chancellor dismissing the bill, must be affirmed.