[No. 29747.   Department Two.   November 15, 1945.]

O. C. Moore, *Appellant,* v. Eugene Keesey, *Respondent.*[1]

[1]Reported in 163 P. (2d) 164.

*O. C. Moore,* for appellant.

*Geo. W. Young,* for respondent.

GRADY, J.—This action was brought by O. C. Moore, an attorney at law, against Eugene Keesey to recover a judgment for the reasonable value of legal services alleged to have been rendered by him to Mr. Keesey. A trial was had before the court and a jury. A verdict was rendered in favor of the defendant. Motions for judgment notwithstanding the verdict and for a new trial were denied. Judgment was entered on the verdict dismissing the action, from which this appeal has been taken.

The appellant assigns as error the refusal of the court to grant his motion for a judgment notwithstanding the verdict of the jury.

In order to have granted the motion it would have been necessary that the court be able to say there was neither evidence nor reasonable inference from the evidence from which the jury could have arrived at the verdict it rendered, admitting the evidence submitted by respondent to be true and interpreting all of the evidence most strongly against appellant and in a light most favorable to respondent.

The evidence in the case shows an issue of fact was litigated as to whether it was agreed and understood between Mr. Moore and Mr. Keesey that the latter was to become personally liable for the compensation to be paid to appellant beyond the sum of five hundred dollars and whether in any event such compensation should exceed that amount. Those questions of fact were for the jury to determine, and when the foregoing test is applied it is clear the court did not err in denying the motion for judgment notwithstanding the verdict.

Prior to the trial of the action and on October 22, 1944, respondent served notice upon appellant that on March 26th, at the hour of ten a. m., application would be made to

the court for the issuance of a commission to take the testimony on oral interrogatories of certain named witnesses in the states of Montana and Idaho. On the same date there was also served upon appellant a notice that the depositions of the witnesses would be taken upon oral interrogatories "before a notary public in and for the state of Washington," on March 28, 1945, at certain designated places. On March 26, 1945, an order was entered directing the issuance of a commission to Geo. J. Stewart, a notary public, to take the depositions of the witnesses, and pursuant thereto a commission was issued by the clerk of the superior court directed to "Geo. J. Stewart of Spokane, Spokane county, Washington." Mr. Stewart went to the states of Montana and Idaho and the depositions were taken before him.

During the trial when the depositions were published appellant objected to them and to their use as evidence in the case on the ground that it was not within the power of a notary public in and for the state of Washington to take depositions in the states of Montana and Idaho. The order directing the issuance of the commission to take depositions was made and entered by one of the judges of the superior court of Washington for Spokane county other than the trial judge. After hearing argument of counsel, the trial judge expressed doubt as to the validity of the depositions, but concluded to allow them to be read in evidence.

■■ The appellant did not appear in court when the application for the issuance of the commission was heard and make any objection to the issuance of a commission to a Washington notary public; and it is argued that, by not appearing, any objection to the validity of the depositions has been waived. It will be noted that the notice of taking depositions stated that they would be taken "before a notary public in and for the state of Washington," but we think that appellant had the right to assume that the commission which the court would direct to be issued would be to one authorized by law to take the depositions. We are also of the opinion that, as a question of power or jurisdiction to take the depositions is involved, such question

could be raised when the depositions were offered as evidence, upon the principle that an act done without jurisdiction is void and can be attacked at any time.

■ The right or authority to take depositions to be read in evidence is statutory, and our statute, Rem. Rev. Stat., § 1239 [P. P. C. § 39-3], is as follows:

"Depositions may be taken out of the state by a judge, justice, or chancellor or clerk of any court of record, a justice of the peace, notary public, mayor, or chief magistrate of any city or town, or any person authorized by a special commission from any court [of record] of this state."

Rem. Rev. Stat., § 1240 [P. P. C. § 39-19], authorizes any superior court in this state, or any judge thereof, to grant a commission to take depositions within or without this state and sets forth the procedure to be taken for the issuance of a commission to take depositions.

It will be observed that the statute above quoted is silent as to whether an officer or person authorized by a special commission must be an officer of and a resident of the foreign state, and we are presented with the question as to whether a notary public commissioned as such in the state of Washington can be authorized by a commission issued out of the superior court of this state to take depositions in a foreign state; and, if this is done, whether such depositions can be received as evidence in the trial of the action in this state for which the depositions were taken.

By Rem. Rev. Stat., § 1233 [P. P. C. § 39-13], depositions may be taken within this state before any judge of the superior court, justice of the peace, clerk of the supreme or superior courts, mayor of a city or a notary public. Comparing that statute with Rem. Rev. Stat., § 1239 [P. P. C. § 39-3], it will be seen that the latter is broader as to those authorized to take depositions than the former and includes in addition a chancellor, mayor of a town, chief magistrate, and a private individual. Our state governmental system does not include a chancellor or chief magistrate, and a private individual has no official status. The enumerated officers derive their powers from our statutes and have no power to perform official acts outside of their

prescribed territorial jurisdiction. We cannot assume the legislature intended to enlarge their powers so as to authorize them to take depositions in foreign states in the absence of a more specific declaration than is to be found in Rem. Rev. Stat., § 1239 [P. P. C. § 39-3], or that it was intended to impose upon parties to actions the unnecessary expense and inconvenience of sending officers or a commissioned individual into other states to take depositions which could be taken by resident officers or individuals duly commissioned.

A reading of the two statutes and considering their apparent purposes leads us to the conclusion that the legislature intended that Rem. Rev. Stat., § 1239 [P. P. C. § 39-3], should refer to officers and individuals of and residing in the state or territory where the depositions were to be taken.

There does not seem to be much authority upon the question before us, but the following hold that a notary public authorized by the laws of a state to take depositions cannot do so beyond the limits of the state or county in which he is commissioned. *Douglass v. Douglass*, 38 N. H. 323; *Silver v. Kansas City, etc. R. Co.*, 21 Mo. App. 5; *Brandt v. Mickle*, 28 Md. 436; 13 Cyc. 848, Depositions; 26 C. J. S. 822, Depositions, § 17b.

We are of the opinion that the commission issued to Mr. Stewart to take depositions was not legal and that the depositions he took in those states should not have been received in evidence.

The depositions related to material issues in the case. We cannot say that, had they been excluded, the jury would probably have rendered the same verdict and must conclude the error in their admission was prejudicial to appellant.

We have decided the question presented from the standpoint of our statute relating to taking depositions out of the state, and do not wish to be understood as expressing any opinion as to the power of a court of equity to appoint a referee, master, commissioner, or like official to conduct

hearings and gather evidence in a foreign jurisdiction for use in the trial of a case.

Several of the errors assigned relate to the cross-examination of appellant over his objection.

The contract for the rendition of legal services, according to the claim of appellant, consisted of letters and conversations between respondent and himself. As a part of the legal services rendered, appellant prepared, served, and filed a complaint in an action brought in the United States district court for Montana against certain defendants. The cross-examination was with reference to the interpretation to be placed upon letters bearing upon the personal liability of respondent for the compensation to be paid appellant and as to certain words used therein; also in regard to the purpose of the action brought in the United States district court in Montana. It is contended that the cross-examination was not responsive to the direct examination, that it called for parol evidence as to plain and unambiguous matters and for explanations of language in documents that spoke for themselves; and because of adverse rulings of the trial court it all had a distracting and prejudicial effect on the minds of the jurors.

In determining the questions raised on this branch of the appeal, we must have in mind that appellant was a party to the action and had testified in support of the allegations of his complaint. Under such circumstances, a trial court is vested with a wide discretion in determining the scope and extent of the cross-examination. We agree with appellant as to the existence of the general rules of evidence set forth in his brief, but after a perusal of his direct and cross-examination we are unable to conclude the trial court misapplied them to the extent it can be said it abused its discretion. Counsel was seeking to refute or at least minimize the effect of evidence submitted by appellant, and while it was not made very clear what was the purpose of some of the cross-examination, particularly with reference to the Montana suit, we think the trial court was justified in overruling the objections made.

The judgment is reversed, and the case remanded for the entry of an order granting appellant a new trial.

BEALS, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.

